J-S32023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                     :            PENNSYLVANIA
                                     :
             v.                       :
                                     :
                                     :
RICHARD DISCO                 :
                                     :
            Appellant       :    No. 3274 EDA 2017

Appeal from the PCRA Order September 15, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1206261-2001

BEFORE:  SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY NICHOLS, J.:                      **FILED JULY 25, 2019**

Appellant Richard Disco appeals *pro se* from the order dismissing as untimely his second petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant claims that his discovery of new facts provides an exception to the time-bar provisions of the PCRA.  We affirm.

We adopt the facts and procedural history set forth in the PCRA court's decision.  **See** PCRA Ct. Op., 1/14/19, 1-5.  On May 19, 2003, a jury convicted Appellant of multiple sex offenses related to the abuse of his stepdaughter. On October 2, 2003, the court sentenced Appellant to an aggregate term of fourteen to twenty-eight years' incarceration.

On August 23, 2005, this Court affirmed Appellant's convictions, but it vacated his judgment of sentence and remanded the case to the trial court for resentencing.  **Commonwealth v. Disco**, 3411 EDA 2003 (Pa. Super. 2005 filed Aug. 23, 2005).  On June 8, 2006, the trial court resentenced Appellant

to an aggregate term of ten to twenty years of incarceration. Appellant filed an appeal to this Court, which he discontinued on February 9, 2007.

On June 11, 2007, Appellant timely filed his first *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition. On February 9, 2009, the PCRA court dismissed Appellant's petition. This Court affirmed the order on August 30, 2010, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on March 29, 2011. ***Commonwealth v. Disco***, 606 EDA 2009 (Pa. Super. filed Aug. 30, 2010) (unpublished mem.), *appeal denied*, 19 A.3d 1049 (Pa. 2011).

On March 25, 2015, Appellant filed the current *pro se* PCRA petition. Appellant subsequently submitted four additional *pro se* filings, which the PCRA court treated as amendments to the original petition. In his filings, Appellant argued that the PCRA court should consider his petition as timely filed due to newly discovered facts, including (1) a January 15, 2015 newspaper interview with the victim, which raised questions about her mental health and cast doubt on the credibility of her accusations; (2) provocative photos of the victim from a magazine article; and (3) statements in Appellant's probation and parole board records about his behavior in the courtroom following his conviction.[1] Appellant also argued that his sentence was illegal

_____

[1] Specifically, Appellant's March 22, 2017 amended PCRA petition asserted that the "supervision history" document prepared by his former parole officer contained false statements, "[t]he most troubling aspect of this issue is, [Appellant] has never been interviewed by the Parole Board," and the

pursuant to the United States Supreme Court's decision in ***Alleyne v. United States***, 570 U.S. 99 (2013).

On July 14, 2017, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the petition without a hearing. Appellant did not file a response to the Rule 907 notice. The PCRA court dismissed the petition as untimely on September 15, 2017.

Appellant timely filed a *pro se* notice of appeal, which was postmarked on September 29, 2017. On October 20, 2017, Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed a responsive Rule 1925(a) opinion, concluding that Appellant had failed to overcome the PCRA's time-bar provisions.

Appellant now raises three questions for our review:

Did the Honorable PCRA Court err when it dismissed Appellant's PCRA filed on March 25, 2015 as untimely and without merit? When Appellant would have been able to plead and prove that the alleged victim's testimony was unreliable to support a conviction of sexual abuse, possibly as a result of her admission of being a woman of many different personalities?

Did the Honorable PCRA Court err when it dismissed Appellant's Amended PCRA Petition filed on August 13, 2015 without a hearing, and where Appellant would have been able to prove that his sentence was illegal?

_____

document at issue "may have played a big part with all the problems [Appellant] has been having with the Parole Board and the Department of Corrections." Amended PCRA Pet., 3/22/17, at 5. Consequently, Appellant requested an evidentiary hearing and the issuance of a subpoena to the parole officer "to answer for her actions, which [have] no doubt hindered [Appellant's] ability to be paroled." ***Id.***

Did the Honorable PCRA Court err when it dismissed Appellant's Amended PCRA Petition as untimely[?] Where Appellant pled and would have been able to prove that a witness for the Commonwealth during his trial, Appellant's Parole Agent, falsified a Supervision History Report and submitted it to the Pennsylvania Board of Probation and Parole to hinder his ability to be paroled?

Appellant's Brief at 2.

After a review of the parties' briefs, the record, and the PCRA court's decision, we adopt and affirm based on the PCRA court's opinion addressing the issues raised on appeal. *See* PCRA Ct. Op. at 5-11. Specifically, the PCRA court determined that Appellant mischaracterized the information in the newspaper article, which did not indicate that the victim suffered from a mental health disorder. *Id.* at 6-7. Appellant also failed to demonstrate how the photos refuted the victim's testimony. *Id.* at 9. Further, the PCRA court concluded that Appellant's complaint about the failure to receive an interview with the Parole Board is not cognizable under the PCRA.[2] *Id.* at 10. Additionally, the holding in *Alleyne* is inapplicable, because Appellant did not receive mandatory minimum sentences.[3] *Id.* at 8-9. Accordingly, having discerned no error of law, we affirm the order denying PCRA relief.

---

[2] For the first time on appeal, Appellant argues that the statements in his parole records call into question all of the parole officer's trial testimony, and Appellant should receive a new trial on this basis. *See* Appellant's Brief at 34. Because Appellant failed to raise this argument before the PCRA court, it is waived. *See Commonwealth v. Roney*, 79 A.3d 595, 611-12 (Pa. 2013) (reiterating that an issue is waived on appeal if it is not presented to the PCRA court in the first instance).

[3] We note, however, that the PCRA court's opinion contains a typographical error in the fourth sentence of the first paragraph on page nine, where the

Order affirmed.

Judgment Entered.

![signature]

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/19

---

court should have written that a mandatory minimum sentence was **not** imposed at the 2006 resentencing hearing.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
.CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :    CP-51-CR-1206261-2001

v.

RICHARD DISCO, Appellant

CP-51-CR-1206261-2001 Comm. v. Disco, Richard
Opinion

8213901291

## OPINION OF THE COURT

Appellant, Richard Disco, appeals from this Court's denial of relief pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa. C.S.A. §9541 *et seq.* For the reasons set forth below, this Court's Order denying relief should be affirmed.

This matter was tried as a jury trial before this Court between May 8, 2003 and May 19, 2003. Appellant was charged with involuntary deviate sexual intercourse and related charges concerning an incident that occurred with the complainant, his step-daughter, in or about 1992, when she was about eleven years old. He also was charged with a May 19, 2001, incident involving the same complainant, when she was twenty years old.

On May 19, 2003, the jury returned a verdict of guilty of involuntary sexual intercourse, indecent assault, endangering the welfare of a child and corruption of a minor. On October 27, 2003, this Court sentenced Appellant to an aggregate prison sentence of sentence of fourteen (14) to twenty eight (28) years.[1]

On August 23, 2005, the Superior Court affirmed Appellant's convictions, but vacated his judgments of sentence and remanded to this Court for resentencing. Commonwealth v. Richard Disco, 3411 EDA 2003 (Pa. Super. 2005). On June 8, 2006 this Court resentenced Appellant to an

---

[1] Specifically, was sentenced to nine (9) to eighteen (18) years for involuntary deviate sexual intercourse; one (1) to two (2) years for indecent assault; two (2) to four (4) years for endangering the welfare of a child; and two (2) to four (4) years for corruption of a minor. All sentences were to run consecutively.

aggregate term of ten to twenty years of imprisonment. Appellant filed a notice of appeal to the Superior Court, but withdrew it on February 9, 2007.

The facts as found by the jury are as follows: the victim, who was twenty-two years old at the time of trial, is Appellant's stepdaughter. She testified to a pattern of sexual behavior towards her by Appellant that began when she was about eleven years old. Specifically, one night when she was about eleven, Appellant came home and took her to look for her mother and sister, who, apparently were out looking for Appellant. As the two were driving, Appellant stated that he wanted to teach her how to kiss. She persistently declined, and Appellant took her back home. (N.T. 5/12/03, 57-68).

When they arrived home, the victim testified that she took off her favorite purple winter coat. Appellant then grabbed her and threw her onto the couch, pushing her down into a couch with her head in a pillow. He got on top of her and pulled down her pants. He then began licking inside her vagina and buttocks. Every time she tried to get up, Appellant held her head down. This continued on for about 20 minutes. After he finished, Appellant laid on top of her until he fell asleep. (N.T. 5/12/03, 65-70).

The complainant then pushed him off her, and ran up to her room. She cried all night. The following morning, Appellant approached her to discuss what happened last night. As she was getting ready to leave for school, he stated, "No one will believe you, and if they do, I'll hurt you, and you'll break a family up." He also told the complainant that "I'll buy you whatever you want, don't tell your mother, don't tell nobody. It was an accident. It will never happen again." (N.T. 5/12/03, 70-72).

She did not tell anyone about what Appellant did to her the previous night because she was scared of what he might do if she told. Yet this incident was not a one-time occurrence. The

2

victim testified to other instances when she would be taking a shower, and Appellant would look in through the shower curtain. However, she continued not to tell anyone because she didn't want her brother to grow up without a father.[2] (N.T. 5/12/03, 71-76).

On May 19, 2001, the victim, who at that time was twenty years old, was sleeping on the sofa in their home. She awoke and found Appellant grinding on top of her body with his body. She testified that his penis, through his clothes, was grinding on the victim's vagina. She kicked him, pushed him away and ran into her room. She told her mother and they called the police. Appellant ran out of the house before the police arrived and called the house numerous times stating: "How dare you call the cops; I was trying to wake you up." (N.T. 5/12/03 80-91).

As a result of this incident, the complainant testified that she has had nightmares, has been unable to sleep, is afraid of the dark, and is scared to walk down the street at night. Also, she has received counseling because of this incident. (N.T. 5/12/03, 113-114).

The complainant's sister, testified that she was awakened in the early morning of May 19, 2001 to find her sister in her bed, rocking back and forth, crying and holding herself. When she asked her sister what was wrong, the complainant said, "Richie touched me." Together, they told their mother[3] and the police were called. (N.T. 5/13/03, 41-48.)

Police Officer Graber arrived as a result of the call. While Officer Graber was talking to the complainant, Appellant kept calling the house demanding to speak to the complainant. Officer Graber picked up the telephone numerous times and Appellant kept hanging up. (N.T. 5/13/03, 176-177).

---

[2] The victim has no blood relationship with Appellant. Her younger brother is the son of her mother and of Appellant.
[3] Her mother also testified, among other things, to the victim's prompt complaint concerning this incident. (N.T. 5/13/03, 72-73)

3

After this 2001 incident, the Appellant wrote several letters[4] and made dozens of phone calls to the victim's mother, in an attempt to convince and/or threaten the victim and her not to cooperate with any prosecution. In one letter, he wrote that he did not want the victim to come to the hearing so that the case would be thrown out. In another letter addressed to the complainant's mother, he wanted the victim to state that she did not remember the incident ever took place. Also, in another letter, he stated that he really needed the victim's help, and he wanted the victim to make the charges go away by not showing up for court. (N.T. 5/12/03, 96-108; N.T. 5/13/03, 84-120).

Appellant testified over a two-day period, in which he denied the allegations and proffered reasons why the Commonwealth witnesses lied. He also proffered witnesses in an attempt to show his good character for sexual conduct, as well as the complainant's bad character for truthfulness. In returning the verdict it did, the jury chose to believe the version of events proffered by the Commonwealth and rejected Appellants version of the events.

On June 11, 2007, Appellant filed a *pro se* PCRA petition. Counsel was appointed and filed an amended petition. On February 9, 2009, this Court, dismissed Appellant's petition. On August 30, 2010, The Superior Court affirmed this Court's order denying post-conviction relief. On March 29, 2011, the Pennsylvania Supreme Court denied allowance of appeal.

On March 25, 2015, Appellant filed the instant PCRA petition *pro se*. Subsequently, Appellant has filed four "amended" PCRA petitions in addition to the instant petition. The most recent amended petition was filed on March 22, 2017. On September 15, 2017, after review of the pleadings and the law and after complying with the procedural requirements in Pa.R.Crim. P. 907,

---

[4] On May 9, 2003, this Court heard a pretrial motion concerning the Commonwealth's request to introduce eighteen such letters. Most of the letters were found to be inadmissible. Five letters were deemed admissible after inadmissible content contained in those letters first was redacted

4

this Court dismissed the petition as untimely without addressing the merits. Appellant timely filed a notice of appeal.

In response to our order pursuant to Pa.R.C.P. 1925(b). Appellant alleged that his most recent PCRA and supplemental amendments were timely. Appellant has amended the instant PCRA petition four times. Appellant refers to each of his Amended Petitions as an "additional pleading to his PCRA petition initially filed on March 25, 2015." Each amended petition raised a new claim and it is unclear whether the *pro se* Appellant meant to include all previous claims in his final amended petition. As a result, the Court reviewed each claim under a "timeliness" analysis.

The first claim was that Appellant is entitled to relief on the basis of newly discovered evidence due to a published newspaper interview, in which the victim said she was "a woman of many different personalities" (PCRA petition, 3/25/15, 5). The second claim was that his sentence is unconstitutional under Alleyne (Motion to correct illegal sentence, 7/7/15, 2). The third claim was that recently obtained pictures of the victim supposedly undermine her credibility (Second Amended PCRA petition, 3/3/16, 1-2). The fourth claim was that Appellant had recently obtained a document from the parole board that contained a statement in which a parole officer supposedly falsely characterized his behavior in court at the time of his conviction (Amended PCRA petition, 3/22/17. 2-4). After review of the pleadings and the law, this Court dismissed the petition as untimely without addressing the merits. The instant appeal followed.

The present PCRA petition is governed by the amended PCRA because it was filed after the effective 1996 date. The amended PCRA included time limitation restrictions. Commonwealth v. Beasley, 741 A.2d 1258, 1260 (P.a. 1999). The timeliness requirements of 42 Pa.C.S.A. §9545(b) "are jurisdictional in nature, and the courts lack jurisdiction to grant PCRA

5

relief unless the petitioner can plead and prove that one of the exceptions to the time bar applies." Commonwealth. v. Gallman, 838 A.2d 768, 774–75 (P.a. Super 2003) (quoting Commonwealth v. Palmer, 814 A.2d 700, 704-705 (P.a. Super 2002)). Under Pa.C.S.A. §9545(b), all PCRA petitions, including second and subsequent ones, must be filed within one year of the date on which the judgment of sentence becomes "final," except three very limited circumstances:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
> 42 Pa. Stat. and Cons. Stat. Ann. § 9545(b)(1)(i)-(iii) (2006); Commonwealth v. Yarris, 731 A.2d 581, 587 (Pa. 1999). *See also* Commonwealth v. Whitney, 817 A.2d 473, 477 (Pa. 2003); Commonwealth v. Fahy, 737 A.2d 214, 218 (Pa. 1999).

Appellant's judgment was considered final on February 9, 2007, the date in which he withdrew his direct appeal. The instant PCRA petition was filed well after the one-year time limit. In order for the instant PCRA to be heard on its merit, Appellant must prove that one of the three limited exceptions applies. Instantly, Appellant alleges that the exceptions contained in 42 Pa.C.S.A. §9545(b)(1)(i)-(iii) apply and therefore he avoided the bar of that waiver. We disagree.

We will address each claim individually in chronological order. The first claim was raised in Appellant's PCRA petition filed on March 25, 2015. Appellant alleged that a 2015 newspaper article, in which the victim describes herself as a "woman of many different personalities," constituted newly discovered information which showed that she suffered from multiple personality disorder. Appellant claimed this information met the standard of the timeliness

6

exception under 42 Pa. C.S. §9545(b)(1)(ii) as newly discovered factual information which were unknown to petitioner and could not have been ascertained by the exercise of due diligence. Appellant claimed this information undermined the victim's credibility regarding her trial testimony; therefore, he is entitled to relief. However, Appellant is misguided.

42 Pa. C.S. §9545(b)(1)(ii) states "the facts **upon which the claim is predicated** were unknown to the petitioner and could not have been ascertained by the exercise of due diligence" (emphasis added). The newly discovered factual information must relate to the underlying claim. The newspaper interview Appellant referenced took place twelve years after Appellant's trial. The interview is not, as Appellant claimed, a reference to a mental health problem or multiple personality disorder. It relates solely to the difference between the victim's television persona and off screen charitable activities. The focus of the interview is entirely about the victim's role on a television show and does not reference Appellant or Appellant's crimes or trial. At no point does the interview make reference to the victim's mental health status during the time period in which the victim testified at Appellant's trial.[5] The "newly discovered facts" discovered by Appellant do not in any way help prove his conclusion that the victim's testimony was not credible.

Furthermore, even if the newspaper interview insinuated the victim had a mental health disorder that undermined the credibility of the victim's trial testimony, which it unequivocally does not, the statement would be classified as inadmissible hearsay. Pa.R.E. 801 defines hearsay as "an out of court statement offered for the truth of the matter asserted." It is well established in Pennsylvania that the newly discovered fact exception cannot be based on inadmissible hearsay. *See* Commonwealth v. Abu-Jamal, 941 A.2d 1263, 1269 (Pa. 2008). Accordingly, Appellant has

---

[5] Furthermore, Appellant was the victim's stepfather. As such, if the victim ever suffered from a mental health disorder, he would have been aware long before this interview. Nonetheless, there is absolutely no indication on the record that the victim ever suffered from a mental health disorder, either at the time of the trial or at the time of the referenced interview.

7

not met any of three exceptions to the timeliness requirements of 42 Pa.C.S.A. §9545(b), therefore the claim is untimely.

The second claim, which was raised in Appellant's first amended petition on August 13, 2015, alleged that Appellant's sentence was illegal under Alleyne v. United States, 133 S.Ct. 2151 (2013). Appellant claimed that he met the standard of the timeliness exception under 42 Pa. C.S. §9545(b)(1)(iii), recognizing a constitutional right established by the Supreme Court of the United States which was held to apply retroactively.[6] However, Appellant's use of Alleyne in the instant petition is misguided.

The Supreme Court held in Alleyne that a jury must prove facts that increase a mandatory minimum sentence beyond a reasonable doubt. This limited to when a court makes a factual finding which increases a penalty to reach a mandatory minimum sentence. As a result that fact will be seen as an element to the crime that must be proved by a jury, meeting a standard of beyond a reasonable doubt. The Supreme Court was clear, however, that this holding is limited to facts that increase mandatory minimum sentences.

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. See, e.g., *Dillon v. United States,* 560 U.S. ——, ——, 130 S.Ct. 2683, 2692, 177 L.Ed.2d 271 (2010) ("[W]ithin established limits[,] ... the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); *Apprendi,* 530 U.S., at 481, 120 S.Ct. 2348 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute").

Alleyne v. U.S., 570 U.S. 99, 116 (2013)

---

[6] Appellant later cites to Commonwealth v. Wolfe, 140 A.3d 651 (Pa. 2016) in an amended petition filed 7/18/16, however, as this case relates to Alleyne, which is inapplicable to the instant petition, there is no need to address these individual cases. Furthermore, the amended petition dated 7/15/16 was also untimely.

Appellant did not receive a mandatory minimum sentence. Appellant was originally sentenced to a discretionary term of nine to eighteen years. There was no mandatory minimum sentence attached to the conviction. Even after resentencing, where Appellant received an aggregate sentence of ten to twenty years, a mandatory minimum sentence was involved. As a result, Alleyne and its progeny are inapplicable to Appellant. Accordingly, Appellant has not met any of three exceptions to the timeliness requirements of 42 Pa.C.S.A. §9545(b), therefore the claim is untimely.

The third claim, which was raised in Appellant's second amended petition on March 3, 2016, alleged newly discovered factual information, in the form of photographs of the victim. Appellant claimed these photographs undermine her victim statement, therefore, meeting the standard of the timeliness exception under 42 Pa. C.S. §9545(b)(1)(ii). However, Appellant is misguided.

As stated previously, 42 Pa. C.S. §9545(b)(1)(ii) states "the facts **upon which the claim is predicated** were unknown to the petitioner and could not have been ascertained by the exercise of due diligence" (emphasis added). Once again, Appellant does not in any way prove that these photographs have any relation to the underlying claim. Appellant does not explain how **undated** photographs refute the victim's impact statement from 2003. Even if Appellant successfully pleaded undated photos had a negative relation to the victim's impact statement, which he does not, the victim's impact statement was taken after the jury found the Appellant guilty. Therefore, this statement had no effect on Appellant being found guilty. As a result, Appellant has not proved that he discovered any new factual information that pertains to the underlying claim. Accordingly, Appellant has not met any of three exceptions to the timeliness requirements of 42 Pa.C.S.A. §9545(b), therefore the claim is untimely.

9

Finally, Appellant's fourth claim, which was raised in Appellant's fourth and most recent amended petition on March 22, 2017, alleged that newly discovered factual information, in the form of a document describing his supervision history that Appellant received in December 2016, meets the standard of the timeliness exception under 42 Pa. C.S. §9545(b)(1)(ii). Appellant claimed he "inadvertently received" a copy of a "Supervision History" document, which was sent to the Parole Board in Harrisburg on July 24, 2003. Appellant received a copy of the document on December 27, 2016. Appellant claimed the document contained false and incriminating statements about things he allegedly said and did after the verdict was read during his trial[7]. As a result, Appellant claimed this Court "has jurisdiction to act on this petition based on the fact that [his parole officer] was a witness for the Commonwealth during his trial."

Appellant's underlying claim does not meet a timeliness exception and has no merit[8]. Appellant asked "for this Court's consideration to grant him the appropriate relief" in the form of an evidentiary hearing. Appellant's argument is ostensibly based on alleged problems with his parole status.[9] However, Appellant's claim is meritless because issues of parole eligibility are not cognizable under the PCRA. "The Commonwealth Court maintains exclusive jurisdiction over appeals from administrative parole orders; as such, a PCRA petition is not the proper avenue for challenging the determination of the Parole Board." Com. v. Camps, 772 A.2d 70, 74–75 (Pa. Super. 2001). *See also* Commonwelath v. Legrande, 567 A.2d 693 (Pa.Super. 1989) (holding that

---

[7] It should be noted that this Court did not entertain the cited document as a source for Appellant's sentencing. This Court sentenced Appellant based solely on the facts and evidence presented at trial.

[8] Appellant references in his Statement of Matters Complained on Appeal that he was within the 60-day limit to file a claim under the timeliness exception by using either the date in which he received a letter from this Court or the date he received a suggestion from his attorney. He is misguided. The date to be used is the date in which the unknown facts could be ascertained by due diligence. He received the document in question more than 60 days before filing the instant PCRA petition. Therefore, even if the claim had merit, which it does not, and it met a timeliness exception, which it also does not, it is untimely.

[9] In Appellant's instant petition, part of his proposed request is for the parole officer in question to be subpoenaed, "ordering her to appear before this Court to answer for her actions, which has no doubt hindered [Appellant's] ability to be paroled. (Amended PCRA Petition, 3/22/17, 5)

10

the PCRA is not the proper vehicle to challenge the Board's determination of parole eligibility); Commonwealth v. Perry, 563 A.2d 511 (Pa.Super. 1989) (holding that the PCRA is not the proper vehicle to challenge the Bureau of Corrections' calculation of sentences).

As the instant petition was filed more than one year after the date on which the judgment of sentence became final and as appellant has neither pleaded nor proven any of the three enumerated statutory exceptions, this Court is without jurisdiction to entertain the substantive claims raised in the Petition.

Finally, as noted above, even if Appellant was able to avoid the bar of waiver, the underlying claim is meritless, as Appellant's newly found factual information does not relate to the underlying claim, only his parole status.

Accordingly, for the reasons set forth above, the Order denying relief under the PCRA should be affirmed.

BY THE COURT:

ROBINS NEW, J.